## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

LEWIS E. DAY,                             )
                                          )
                    Petitioner,           )
                                          )
        v.                                )           No. 4:21-CV-01494-AGF
                                          )
DENISE HACKER,                            )
                                          )
                                          )
                    Respondent.           )

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Lewis E. Day, a detainee at the Southeast Missouri Mental Health Center, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Petitioner was adjudged by a jury to be a sexually violent predator ("SVP") under the relevant state statute,[1] and ordered to be civilly committed to the custody of the department of Mental Health and confined in a secure facility until such time as his mental abnormality is so changed that he is safe to be at large.  For the reasons set forth below, habeas relief will be denied.

## BACKGROUND

As recognized by the Missouri Court of Appeals, Petitioner has a long history of sexual violence and sexual exposure.  ECF No. 10, Resp Ex. 6 at 2.  In 1985, Petitioner was hospitalized after attempting to self-mutilate his genitals and, while in the hospital, attempted to grab a female nurse by the neck.  ECF No. 10, Resp. Ex. 1 at 258-60.

---

[1]     Mo. Rev. Stat. § 632.480, *et seq.*

During a separate hospitalization, for attempting to push his sister out of a car, Petitioner made "sexualized comments" towards and propositions to hospital staff members. *Id.* at 259-61. On another occasion, Petitioner self-reported that he attempted to have sexual intercourse with a cat. *Id.* at 260.

In 1987, Petitioner exposed himself to a female employee in a fast-food restaurant and threatened her. *Id.* at 263-64. Later that same year, he approached two women in a car brandishing a knife, exposed himself, and threatened them while demanding sex. *Id.* at 272-73. Petitioner was charged and convicted for this incident and while incarcerated, received a sexual conduct violation for trying to force another inmate to have sex. *Id.* at 279. Shortly after his release from prison, Petitioner was convicted of rape and forcible sodomy. *Id.* at 281-91.

While incarcerated, Petitioner repeatedly exposed himself to female correctional staff and continued a pattern sexual misconduct. *Id.* at 292-93. Despite numerous attempts to get Petitioner to engage in sex-offender treatment, Petitioner was deemed too unstable and mentally ill to participate in the Missouri Sex Offender Program ("MOSOP"). *Id.* at 300-01.

On several occasions between 2007 and 2010, the Director of MOSOP sent letters to the warden of the Farmington Correctional Center listing Petitioner as an "offender [who] does not appear to meet the criteria of a sexually violent predator…[and] will not be referred to the Multidisciplinary Team for further review. ECF No. 1, Petit. Ex. B at 6-8. Following his release from prison, Petitioner failed to register as a sex offender and eventually tried to attack a female store clerk with a knife for refusing to sell him alcohol

2

while he was inebriated, leading to his re-incarceration.  ECF No. 10, Resp. Ex. 1 at 308-09.  Petitioner refused to participate in any sex-offender treatment.  *Id.* at 311-12.

**Civil Commitment**

Petitioner was denied parole several times for failing to complete the MOSOP program, and as he approached his maximum release date of January 29, 2018, he was re-evaluated in his end-of-confinement report and found to have met the statutory definition of an SVP.  ECF No. 1, Petit. Ex. A at 16.  After following the statutory procedures for reviewing Petitioner's SVP determination, the State filed a petition to determine whether Petitioner was an SVP, and if so, to commit him to the custody of the Department of Mental Health "in a secure facility for control, care and treatment until such time as his mental abnormality has so changed that he is safe to be at large[.]"  ECF No. 1, Petit. Ex. E at 1-3.

Prior to his probable cause hearing, Petitioner filed several motions through appointed counsel seeking to dismiss the State's petition and seeking expedited discovery.  ECF No. 10, Resp. Ex. 2 at 63-69; 70-72.  The circuit court denied Petitioner's request to continue the probable cause hearing until the State produced expedited discovery and ultimately denied Petitioner's motion to dismiss, finding that the legal elements had been sufficiently pled and that there was evidence that Petitioner suffered from a mental abnormality.  ECF No.1, Petit. Ex. A at 11.

After repeatedly continuing the trial date, the circuit court held Petitioner's trial on April 29, 2019.  Petitioner, through counsel, raised several motions in limine, including as pertinent here, a motion to exclude his diagnosis of Other Specified Paraphilic

Disorder, Non-Consent ("OSPD, Non-Consent") on the basis that the diagnosis did not meet the threshold for admissibility, and a motion to quash his deposition, both of which were denied by the circuit court. ECF No. 10, Resp. Ex. 2 at 220-22; 272-88. The State also filed a motion in limine seeking, among other things, to prohibit testimony or argument that the percentage risk on any applied actuarial tests conveyed Petitioner's individual risk of re-offending. *Id.* at 152.

At trial, the State called Dr. Kent Franks ("Dr. Franks"), a licensed clinical psychologist, who testified that he diagnosed Petitioner with OSPD, Non-Consent, and that Petitioner was more likely than not to engage in predatory acts of sexual violence as a result of his mental abnormality. ECF No. 10, Resp. Ex. 1 at 358. On cross examination, Dr. Franks discussed Petitioner's risk of sexual recidivism, at which point Petitioner's counsel objected pursuant to the motion in limine and sought a mistrial, which the trial court denied. *Id.* at 384-90. The circuit court did, however, strike Dr. Franks's testimony related to Petitioner's risk of recidivism.

The State also called Dr. Nena Kircher ("Dr. Kircher"), a licensed psychologist to testify at trial. Dr. Kircher also diagnosed Petitioner with OSPD, Non-Consent and found that he was more likely than not to continue engaging in predatory sexual violence unless confined to a secure facility. *Id.* at 457-58.

Following the close of the State's evidence, Petitioner moved, through counsel, for a directed verdict, arguing that the State had failed to provide evidence sufficient to sustain its burden of proving by clear and convincing evidence that Petitioner was an SVP. ECF No. 10, Resp. Ex. 2 at 369. The circuit court denied the motion.

4

Petitioner, through counsel, called Dr. Lisa Witcher ("Dr. Witcher"), a certified forensic examiner with the Missouri Department of Mental Health.  Dr. Witcher testified that she did not believe that Petitioner suffered from a mental abnormality and that there were no set criteria for diagnosing someone with OSPD, Non-Consent.  ECF No. 10, Resp. Ex. 1 at 519; 523.

Petitioner also called Dr. Brian Holoyda ("Dr. Holoyda"), a forensic psychiatrist. Dr. Holoyda testified that OSPD, Non-Consent had not been included in the Diagnostic and Statistical Manual of Mental Disorders ("DSM") due to insufficient research to support that the disorder exists, insufficient evidence of reliable diagnosability, and numerous organizations' advice against inclusion because the diagnosis is not generally accepted in the fields of psychology and psychiatry.  *Id.* at 624-26.  Dr. Holoyda further testified that it would not be an acceptable practice to diagnose a condition that has been rejected by the DSM and accompanying literature, that a diagnosis of OSPD, Non-Consent was unreliable, and that OSPD, Non-Consent was an inappropriate diagnosis to make in forensic settings.  *Id.* at 629-645.

Following the close of all evidence, Petitioner, through counsel, again moved for a directed verdict, which was denied by the circuit court.  ECF No. 10, Resp. Ex. 2 at 364. Petitioner also proffered jury instructions specifying OSPD, Non-Consent, as the mental abnormality from which the jury had to find he suffered, rather than requiring that the jury find only that he suffered from a mental abnormality generally.  *Id*. at 192-96.  The circuit court rejected the proffered instructions.

5

On May 1, 2019, the jury unanimously found Petitioner to be an SVP and the trial court ordered his commitment.  Petitioner, through counsel, filed a Motion for New Trial or in the Alternative Judgment Notwithstanding the Verdict on May 10, 2019, which was denied by the circuit court.  *Id.* at 381.

## Direct Appeal

On direct appeal, Petitioner, through appointed counsel, raised three arguments. In his first argument, Petitioner contended that the trial court erred when it denied his motion to exclude the diagnosis of OSPD, Non-Consent because the evidence failed to meet the standards under Mo. Rev. Stat. § 490.605 for the admissibility of scientific evidence through expert testimony.  ECF No. 10, Resp Ex. 3 at 13.  The Court of Appeals rejected this argument, finding that Petitioner did not contest that testimony about OSPD, Non-Consent would have assisted the jury, nor did he challenge the qualification of the State's experts.  ECF No. 10, Resp. Ex. 6 at 7.  Furthermore, the Court of Appeals held that the State adduced significant expert testimony that disagreed with the testimony provided by Petitioner's experts and that the record showed that many experts in the field accept diagnoses of OSPD, Non-Consent to be reasonably reliable.  *Id.* at 7-9.

In his second argument, Petitioner claimed that the trial court erred when it denied his motion for acquittal at the close of the State's evidence and at the close of all evidence, because, viewed in the light most favorable to the verdict, the State failed to prove by a preponderance of the evidence that he was an SVP.  ECF No. 10, Resp. Ex. 3 at 14.  Petitioner argued that this was an error because there was not sufficient evidence that a jury of reasonable people could have found that he suffered from a qualifying

mental abnormality, in that the abnormality alleged in this case was not a mental health condition by the standards of modern psychology, and as such, could not support a finding that it constituted a mental abnormality under the relevant state statute.  *Id.*  The Court of Appeals rejected Petitioner's argument and second claim, finding, as Petitioner acknowledged, that Missouri courts have consistently held that a diagnosis of OSPD, Non-Consent is sufficient to establish mental abnormality and support a finding that an individual is an SVP.  ECF No. 10, Resp. Ex. 6 at 9.

In his third argument, Petitioner argued that the trial court was required to submit his proffered jury instructions requiring the jury to find not only that he suffered from a mental abnormality, but that he suffered from the specific mental abnormality of OSPD, Non-Consent.  ECF No. 10, Resp. Ex. 3 at 15.  The Court of Appeals rejected this argument and claim, finding that the Supreme Court of Missouri had already rejected the level of unanimity that Petitioner sought to impose.  ECF No. 10, Resp. Ex. 6 at 10-11.

The Court of Appeals affirmed the judgment of the Circuit Court on September 20, 2020.  The Missouri Supreme Court denied transfer on January 26, 2021.  ECF No. 10, Resp. Ex. 8 at 1.

**Federal Habeas Petition**

Petitioner raises ten grounds for relief in his federal habeas petition.  For each claim that Petitioner did not raise on direct appeal, he asserts that his appellate attorney refused to raise the claim.

Ground One

In Ground One, Petitioner claims that the State never proved probable cause and that the trial court's finding of probable cause was based on false statements.

Ground Two

In Ground Two, Petitioner claims that he was denied his right to testify because he was not provided with medication to calm himself down and avoid rambling incoherently.

Ground Three

In Ground Three, Petitioner claims his trial counsel was ineffective for failing to argue that the State retaliated against him for filing a grievance against the parole board and for failing to depose the State's expert witnesses.  Petitioner also claims his direct appeal counsel was ineffective failing to request oral argument.

Ground Four

In Ground Four, Petitioner alleges prosecutorial misconduct based on purported lies and misstatements intended to taint and prejudice the jury.

Ground Five

In Ground Five, Petitioner claims that the trial court erred by declining to grant a directed verdict because there was not sufficient evidence that he presently suffered from a mental abnormality.

Ground Six

In Ground Six, Petitioner claims that his diagnosis of OSPD, Non-Consent was not a recognized mental abnormality under Missouri law.  Petitioner also claims that appellate counsel failed to challenge the qualifications of the State's experts.

Ground Seven

In Ground Seven, Petitioner claims that the State violated the trial court's ruling on a motion in limine by referring to recidivism factors and making improper comments in closing arguments.

Ground Eight

In Ground Eight, Petitioner claims that his civil commitment violates the Ex Post Facto Clause and the Due Process Clause because he is not being committed to the "least restrictive environment."  ECF No. 1, Petit. at 18.

Ground Nine

In Ground Nine, Petitioner claims that Missouri's sexual predator commitment statute is invalid because the bill creating it violates Missouri's single subject rule.

Ground Ten

Finally, in Ground Ten, Petitioner claims that disclosure of his records, including "rap sheets," for the purpose of his sexually violent predator commitment proceedings were a violation of his right to privacy.

Respondent argues that, with the exception of Petitioner's claim in Ground 6 that his diagnosed mental abnormality was not a mental abnormality under Missouri Law, all of Petitioner's claims are procedurally defaulted, and that all claims, including Ground 6, are in any event meritless.

## DISCUSSION

### Legal Standard

Federal habeas relief is available to a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Relief is available to challenge a state court order of civil commitment. *Duncan v. Walker*, 533 U.S. 167, 176 (2001); *Rick v. Harpstead*, 110 F.4th 1055, 1058 (8th Cir. 2024). Indeed, courts have regularly reviewed civil commitment proceedings relating to the involuntary commitment of sex offenders under state statutes, *see Poole v. Goodno*, 335 F.3d 705 (8th Cir. 2003); *Linehan v. Milczark*, 315 F.3d 920 (8th Cir. 2003).

Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that habeas relief cannot be granted unless the state court's adjudication:

1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court decision is 'contrary to' clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent yet reaches the opposite result." *Zornes v. Bolin*, 37 F.4th 1411, 1414 (8th Cir. 2022) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

The unreasonable application standard applies if the state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Bookwalter v. Vandergriff*, 73 F.4th 622, 624 (8th Cir. 2024) (citing *Nash v. Russell*, 807 F.3d 892, 897 (8th Cir. 2015). A petitioner must show that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. (citing *White v. Woodall*, 572 U.S. 415, 419-20 (2014).

The state's factual determinations are presumed correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. §

11

2254(e)(1). The existence of some contrary evidence does not establish that a state court's factual determination was unreasonable, nor is the determination unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

## Exhaustion

Before this Court may grant relief on the merits of a petition for a writ of habeas corpus, a petitioner must first exhaust his state law remedies. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion requirement is satisfied if a petitioner has fairly presented his claim first in state court, or if there are no currently available non-futile state remedies. *Smittie v. Lockhart*, 843 F.2d 295, 296 (8th Cir. 1988). A review of the record shows that all of Petitioner's claims are exhausted inasmuch as he has no currently available non-futile state remedies.[2] The Court further notes that Respondent does not argue that any of Petitioner's claims remain unexhausted.

## Procedurally Defaulted Claims

Under the doctrine of procedural default, "a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Marcyniuk v. Payne*, 39 F.4th

---

[2]     Courts in this district have found that civilly committed SVP petitioners have exhausted their State remedies after directly appealing to the Missouri Court of Appeals. *See e.g., Spicer v. Dormire*, No. 4:10CV1192 SNLJ, 2012 WL 4050313, at *5 (E.D. Mo. May 15, 2012); *Spencer v. Blake*, No. 4:06CV00106 FRB, 2009 WL 585987, at *3 (E.D. Mo. Mar. 6, 2009); *Lieurance v. Blake*, No. 4:04CV705 CDP, 2007 WL 2701984, at *3 (E.D. Mo. Sep. 10, 2007).

988, 995 (8th Cir. 2022) (citing *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[3]  To establish cause for a procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with state procedural requirements.  *Coleman*, 501 U.S. at 750.  "If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted."  *Marcyniuk*, 39 F.4th at 995 (citing *Anderson v. Kelley*, 938 F.3d 949, 954 (8th Cir. 2019)).

With the exception of his claim in Ground 6 that his diagnosis of OSPD, Non-Consent was not a recognizable mental abnormality, Petitioner failed to raise any of his asserted Grounds for relief in his direct appeal to the Missouri Court of Appeals.  Because Petitioner did not pursue these claims on his direct appeal, he has defaulted these claims.  *Jolly v. Gammon,* 28 F.3d 51, 53 (8th Cir. 1994) (recognizing that a claim must be presented at each step of the judicial process in order to avoid default) (citing *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)).

Petitioner argues that his appellate counsel's refusal to raise all of his preferred claims excuses his default.  However, there is no clearly established federal right to counsel in state civil commitment proceedings and, therefore, ineffective assistance of

---

[3]    In circumstances involving custody following criminal conviction, a court may also excuse default upon a showing of actual innocence such that a miscarriage of justice would result by failing to consider the claim.  *Murphy v. King*, 652 F.3d 845, 849-50 (8th Cir. 2011).  However, claims of actual innocence are not sufficient to excuse procedural default in the context of civil commitment.  *See Harpstead*, 110 F.4th at 1061 (declining to import the actual-innocence exception into civil commitment cases).

counsel cannot excuse the procedural default here.  *See Davila v. Davis*, 582 U.S. 521, 522-23 (2017) (where no constitutional right to counsel exists for underlying proceeding, any attorney error in that proceeding that led to default in state court cannot constitute cause for default in federal habeas) (citing *Coleman*, 501 U.S. 722).

Furthermore, even if ineffective assistance of counsel could excuse procedural default in this context,[4] Petitioner's claims would not survive because they are without merit.  *See Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010) (holding that counsel's failure to assert such a meritless objection does not constitute ineffective assistance).  For ineffective assistance of counsel to constitute cause to excuse procedural default, the ineffective assistance must rise to the level of an independent constitutional violation.  *Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004) (citation omitted).  "Thus, the assistance rendered must have been constitutionally substandard and prejudice must have resulted therefrom."  *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

When a claim of ineffective assistance of counsel involves direct appeal counsel, a habeas petitioner must show that "there is a reasonable probability that the result of the direct appeal would have been different if the argument had been made."  *Carter v. Bowersox*, 265 F.3d 705, 713-14 (8th Cir. 2001) (citation omitted).  "When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain

---

[4]     *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (in certain circumstances, counsel's ineffectiveness in failing to properly preserve a claim for review in state court may constitute cause to excuse procedural default).

an ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006) (citation omitted).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome." *Id.*

Petitioner offers no argument or evidence to support that there is a reasonable probability that the result of his appeal would have been different had appellate counsel raised his preferred arguments.  Indeed, Petitioner has offered nothing more than bare conclusions in support of Grounds One, Two, Three, Four, Five, Seven, Eight, Nine, and Ten, and has not offered any explanation of how he believes the claims violate *federal* constitutional rights, as opposed to merely violate state law.  *See e.g., Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (requiring a non-conclusory, affirmative showing that a habeas claim has merit).

The Missouri Court of Appeals found that the State adduced significant expert testimony that disagreed with the testimony provided by Petitioner's experts, that the Missouri Supreme Court has consistently held that a diagnosis of OSPD, Non-Consent is sufficient evidence to establish a mental abnormality and support a finding that an individual is an SVP, and that it was persuaded that the trial court's decision was based on substantial evidence and was made after careful consideration.  ECF No. 10, Resp. Ex. 6 at 9.  Accordingly, it cannot be said that Petitioner's appellate counsel's conduct rose to the level of an independent constitutional violation.  *Evans*, 371 F.3d at 445 (citation omitted); *see also Zinzer v. State of Iowa*, 60 F.3d 1296, 1299 (8th Cir. 1995) (no ineffective assistance in failing to raise claim unlikely to succeed).

15

Out of an abundance of caution, the Court will also briefly address Petitioner's independent claims of ineffective assistance of counsel raised in Grounds Three and Six. Plaintiff's claims that trial counsel provided ineffective assistance are procedurally defaulted because he failed to raise them in his direct appeal.  The Missouri Supreme Court has held, based upon state law, that individuals may bring ineffective assistance of counsel claims on direct appeal in SVP proceedings.  *See Grado v. State*, 559 S.W.3d 888, 897 (Mo. banc 2018); *see also Helm v. State*, 685 S.W.3d 416, 426 (Mo. App. W.D. 2023) (noting that where an ineffective assistance of counsel claim cannot be determined based on the appellate record, the case is remanded to the circuit court for an evidentiary hearing).  Petitioner failed to do so here.

Furthermore, even assuming Petitioner's claims were not procedurally defaulted, there is no evidence to support Petitioner's argument in Ground Three that he was retaliated against by the State for filing a grievance report. [5]  As to Petitioner's other independent claim against trial counsel in Ground Three, he fails to allege what information trial counsel could have or should have discovered in a deposition that would have enabled her to impeach the testimony of the State's expert witnesses.  A review of the trial transcript shows that Petitioner's trial counsel zealously challenged the testimony of the State's experts to challenge the reliability of their diagnoses and to pursue a trial strategy to emphasize that Petitioner was not presently suffering from a mental

---

[5]    Petitioner's trial counsel also explained in a letter to Petitioner that Dr. Kircher testified that she was unaware of the grievance filed by Petitioner and there was no way to prove his belief that the State had retaliated against him. *See* Petit. Ex. 2 at 17.

abnormality.  ECF No. 10, Resp. Ex. 1 at 362-87; 459-76.  Furthermore, Petitioner's trial counsel called two experts that directly challenged the testimony of the State's experts.

Petitioner's bare assertions, without more, are insufficient to overcome the strong presumption that counsel's conduct constituted sound trial strategy.  *See James v. Iowa*, F.3d 586, 590) (8th Cir. 1996) (strategy need not be successful to be reasonable under *Strickland*).  Nor can Petitioner show that, even if trial counsel was deficient, there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Harris v. Bowersox*, 184 F.3d 744, 756 (8th Cir. 1999) (citing *Strickland*, 486 U.S. at 694).

As for Petitioner's claim in Ground Three that his appellate counsel provided ineffective assistance by failing to request oral argument and his claim in Ground Six that his appellate counsel failed to challenge the qualifications of the State's experts, here too Petitioner has failed to provide any evidence that he presented this claim to the State court for review.  However, even if Petitioner had properly raised this claim, it would be meritless.  Petitioner offers no argument or evidence to support that there is a reasonable probability the result of his appeal would have been different had appellate counsel requested oral argument.  *See Carter*, 265 F.3d at 713-14 (8th Cir. 2001) (citation omitted).[6]

---

[6]    Both of the State's expert witnesses have frequently testified in SVP proceedings and their testimony has been relied upon by the Missouri Court of Appeals and the Missouri Supreme Court to find sufficient evidence that an individual was more likely than not to commit a future predatory act of sexual violence if not confined to a secure facility.  *See e.g., Nelson v. State*, 521 S.W.3d 229 (Mo. banc 2017); *Davis v. State*, 635 S.W.3d 176 (Mo. App. W.D. 2021); *Matter of Bohannon*, 583 S.W.3d 490 (Mo. App. S.D. 2019).

Accordingly, Petitioner's claims raised in Grounds One, Two, Four, Five, Seven, Eight, Nine, and Ten, are procedurally barred from federal habeas review and will be denied. Petitioner's independent ineffective assistance of counsel claims against trial and appellate counsel raised in Grounds Three and Six are also procedurally barred and without merit, and therefore will be denied.

## Ground 6 (Diagnosed Mental Abnormality Not Valid Diagnosis)

In Ground 6, Petitioner argues that his diagnosis of OSPD Non-Consent was not a valid diagnosis to find that he suffered from a mental abnormality.[7] Respondent concedes that Petitioner's sixth ground for relief appears to track with his first and second arguments raised on direct appeal, namely, that the trial court abused its discretion in denying his motion to exclude testimony diagnosing him with OSPD, Non-Consent and that the trial court erred in denying his motions for directed verdict because his diagnosis was not a reliable diagnosis. The Court of Appeals denied Petitioner's claims. ECF No. 10. Resp. Ex. 6 at 6-9.

The Court of Appeals noted that Missouri's SVP statute is civil in nature, and that admission of expert testimony in proceedings before the probate division of the circuit court, like SVP proceedings, are governed by Mo. Rev. Stat. § 490.065.1.[8] Furthermore,

---

[7]    Petitioner refers to his diagnosis as "NOS-Non Consent," which the Court understands to be referring to his diagnosis of OSPD Non-Consent.

[8]    *See Elliot v. State*, 215 S.W.3d 88. 93 (Mo. banc 2007); *see also generally Jones v. State*, 565 S.W.3d 704 (Mo. App. S.D. 2018) (discussing the relationship between SVP proceedings and the probate division).

the Court of Appeals recognized that there was "professional debate over the propriety of diagnosing a person with OSPD, Non-Consent, but that many experts in the field understand themselves to be reasonably relying upon diagnoses of OSPD, Non-Consent, and further accept such diagnoses to be reasonably reliable." *Id.* at 8. Such disagreement does not require the exclusion of an expert. *Id.* (citing *In re Shafer*, 171 S.W.3d 768, 774 (Mo. App. S.D. 2005) (internal citation omitted); Mo. Rev. Stat. § 490.065.1(3)). Instead, where, as here, the opinion has substantial acceptance in the field, "questions as to the sources and bases of the expert's opinion affect the weight, rather than the admissibility, of the opinion, and are properly left to the jury." ECF No. 10, Resp. Ex. 6 at 8 (citing *Matter of Sohn*, 473 S.W.3d 225, 230 (Mo. App. E.D. 2015) (internal quotation omitted).

The Court of Appeals also noted that Missouri courts "have consistently held that a diagnosis of OSPD, Non-Consent is sufficient to establish a mental abnormality and support a finding that the respondent is an SVP." *Id.* at 9 (citing *Nelson v. State*, 521 S.W.3d 229, 233 (Mo. banc 2017) (internal citations omitted); *In re Cozart*, 433 S.W.3d 483, 491 (Mo. App. E.D. 2014); *In re Parnell*, 390 S.W.3d 849, 852 (Mo. App. S.D. 2013)).

 "It is not the province of a federal habeas court to reexamine state court determinations on state-law questions." *Estelle v. McGuire*, 502, U.S. 63, 67-68 (1991); *Skillicorn v. Luebbers*, 475 F.3d 965, 974 (8th Cir. 2007) (quoting *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) (a federal court may not re-examine a state court's interpretation and application of state law). "In conducting habeas review, a federal court

19

is limited to deciding whether a conviction violated the constitution, laws or treaties of the United States. *Estelle*, 502 U.S. at 68. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006).

Furthermore, while the Supreme Court has recognized that the due process clause places constraints on the use of civil commitment statutes, it has upheld statutes "when they have coupled proof of dangerousness with proof of some additional factor, such as a 'mental illness' or 'mental abnormality.'" *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997). And the Supreme Court has left it to the states to set their own procedural requirements for civil commitments, including requirements for commitment as a sexually violent predator. *Poole v. Goodno*, 225 F.3d 705, 708 (8th Cir. 2003). In particular, the criteria to satisfy due process are as follows:

> (1) "The confinement takes place pursuant to proper procedures and evidentiary standards," (2) there is a finding of "dangerousness either to one's self or to others," and (3) proof of dangerousness is "coupled…with the proof of some additional factor, such as a "mental illness" or "mental abnormality."

*Kansas v. Crane*, 534 U.S. 407, 409-10 (quoting *Hendricks*, 521 U.S. at 357-58).

All criteria were satisfied in the adjudication by the state court. Because the Court may not re-examine an issue of state law, and it cannot be said that the state court's adjudication of the instant claims resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, Petitioner's Sixth Ground cannot support a grant of federal habeas relief.

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2). *See Buck v. Davis*, 580 U.S. 100, 115 (2017) (standard for issuing a Certificate of Appealability) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Lewis E. Day for a writ of habeas corpus relief is **DENIED.** ECF No. 1.

**IT IS FURTHER ORDERED** that a certificate of appealability shall not be issued.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 11th day of March, 2025

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE